Filed 3/8/22  P. v. Dominguez CA4/1
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D077859 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR105918) |
| MARTY DOMINGUEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Reversed and remanded with directions.

Randi Covin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Lynne McGinnis, and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

In March 1990, a jury convicted Marty Dominguez of second degree murder (Pen. Code,[1] § 187) and found true an allegation that Dominguez was armed with a deadly weapon during the commission of the offense (§ 12022, subd. (a)).  The court sentenced Dominguez to prison for 21 years to life.

Dominguez appealed, and we affirmed the judgment in an unpublished opinion, *People v. Dominguez*, December 16, 1991, D012153 (*Dominguez I*).

In January 2019, Dominguez filed a petition for resentencing under section 1170.95, which permits a defendant convicted of murder under a felony-murder theory or the natural and probable consequences doctrine to petition for the conviction to be vacated and resentenced.  (§ 1170.95, subd. (a).)  The superior court found that Dominguez did not make a prima facie showing that he was entitled to relief and denied the petition.

Dominguez appealed, contending the court erred in determining his petition did not establish a prima facie case for relief.  In our original opinion, we concluded the superior court properly considered the record of conviction to determine as a matter of law that Dominguez is ineligible for relief under section 1170.95.

Thereafter, the California Supreme Court granted Dominguez's petition for review and ultimately transferred the matter to this court with directions to vacate our prior opinion in light of newly enacted Senate Bill No. 775 (Stats. 2021, ch. 551) (Senate Bill 775), which became effective January 1, 2022.

We requested and received supplemental briefing from the parties on the impact of Senate Bill 775 on this appeal.  Both Dominguez and the People contend the order must be reversed and the case remanded to the superior

---

[1]    Statutory references are to the Penal Code unless otherwise specified.

2

court with directions to issue an order to show cause (OSC) and conduct an evidentiary hearing as required by section 1170.95. We agree. As such, we will reverse the order and remand the matter back to the superior court with directions.

FACTUAL AND PROCEDURAL BACKGOUND[2]

"On the evening of June 9, 1989, Paul [M.], his brother Mark and a friend, Elvis [W.], were walking down Iona Street on their way home when someone yelled from a passing car with four occupants. The car made a U-turn and pulled alongside the three pedestrians. An argument ensued between Paul and Dominguez who was in the car. At one point, Paul said, 'Fuck you, Mexicans. You can't tell me how to talk.' He threw down his jacket and challenged the vehicle's occupants to fight. While Paul's companions were restraining him, a person with a firearm alighted from the vehicle. He tried to shoot but the gun would not fire. Dominguez told the man not to shoot and pushed him back to the car. Dominguez and one of Paul's companions shook hands and Dominguez said to Paul, 'I'll deal with you another day.' The car pulled down the street and stopped. Dominguez offered to finish the fight. He then told a companion, 'Go ahead, shoot, shoot.' The companion started shooting, hitting Paul three times. One shot was fatal.

"Dominguez testified he lived with co-defendant Debra . . . [G.] and several children down the block from the incident. He left the children home while he and [Debra] went to get some food. On the way, they gave a ride to two men they saw on the street. The men told them they wanted a ride because they were having trouble with some Black people. The car pulled

_____

[2]   We take the facts of the underlying conviction directly from our opinion in *Dominguez I, supra,* D012153.

3

over so Dominguez could talk with the group of Black[ ] [people]. Paul became loud and abusive. After Dominguez returned to the car, they proceeded down the street. One of the two men asked to get out. [Debra] pulled over, the man alighted and Dominguez heard a series of gunshots. The men returned to the car and [Debra] sped away.

"The prosecution presented evidence [Debra]'s 11-year-old child told officers after the incident Dominguez had left the house with a relative, Larry [D.], the man identified as the shooter. The trial court denied Dominguez's motion to suppress this statement."

Dominguez appealed his conviction, arguing the trial court erred in admitting the 11-year-old's statement because it was the product of an illegal entry into the home. We concluded the trial court did not err. (*Dominguez I*, *supra*, D012153.)

Dominguez filed a petition for resentencing under section 1170.95 in January 2019. The superior court then appointed Dominguez counsel and set a briefing schedule.

In February 2019, after requesting and receiving an extension to file a response, the People filed a motion to dismiss the petition based on the alleged unconstitutionality of Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437). The People's motion was accompanied by two exhibits, one of which a copy of our unpublished opinion in *Dominguez I*, *supra*, D012153. In March 2019, Dominguez's appointed counsel filed a response to the People's motion. Dominguez's response was accompanied by three exhibits consisting of excerpts from the record on appeal in *Dominguez I*. The People then filed a reply.

In May 2019, the superior court stayed the proceedings until this court issued its ruling on the constitutionality of Senate Bill 1437. After we

4

determined that Senate Bill 1437 was constitutional (see *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 257-264), in June 2020, the People filed a response to Dominguez's petition asking the court to deny the petition based on Dominguez's failure to establish a prima facie case. The People's response attached excerpts from the record on appeal and another copy of our unpublished opinion in *Dominguez I*, *supra*, D012153.

Later in June 2020, Dominguez's appointed counsel filed a reply to the People's response to the petition, arguing that Dominguez had established a prima facie case for relief and that the court, at this juncture, could not consider this court's opinion in *Dominguez I*, *supra*, D012153.

In July 2020, the superior court denied the petition without ordering an evidentiary hearing, finding that Dominguez had not made a prima facie showing that he was entitled to relief. Citing *People v. Drayton* (2020) 47 Cal.App.5th 965 (*Drayton*), the court explained that it "need not engage in any fact-finding" because the "undisputed facts as shown by the record on appeal reflect [Dominguez] aided and abetted a companion in the shooting that resulted in the victim's death." The superior court also observed that "CALJIC instructions 3.00 and 3.01, defining principals and aiding and abetting, were given to the jury in this case," and "[a]s these instructions make clear, one who aids and abets is a principal in the commission of the crime." The superior court explained that because the Court of Appeal's recitation of the facts "clearly establish that [Dominguez] aided and abetted the murder in this case," the superior court concluded, "[w]ithout reweighing any evidence," that Senate Bill 1437's changes to the Penal Code "do not affect [Dominguez's] case . . . ."

Dominguez appealed. In a published opinion, we affirmed the order. Our high court granted Dominguez's petition for review and ultimately

transferred the matter back to this court with directions to vacate our previous opinion and reconsider the matter.

DISCUSSION

On September 30, 2018, the Governor signed Senate Bill 1437. "The legislation, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189, as well as by adding Penal Code section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722-723; see *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

Section 1170.95, subdivision (c) provides: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

When a trial court reviews a petition for resentencing, the court first determines if the petitioner has shown a prima facie case for relief under the statute. If so, the court must issue an OSC and hold an evidentiary hearing on the petition. (*People v. Lewis* (2021) 11 Cal.5th 952, 962 (*Lewis*).)

6

However, the court may deny the petition if the person is ineligible as a matter of law. (*Drayton, supra,* 47 Cal.App.5th at pp. 980-981.) The court may review the record of conviction, including any prior appellate opinion, to determine if the petitioner's allegations are rebutted by the record. (*Lewis*, at p. 972.) However, the court may not engage in factfinding and weighing credibility at the prima facie stage of petition review. (*Drayton*, at pp. 979-980.)

The court in *Lewis* went on to explain the process of reviewing petitions for resentencing under section 1170.95. The court said: "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra,* 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid.*)

" 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra,* 11 Cal.5th at p. 971.) "Appellate opinions . . . are generally considered to be part of the record of conviction." (*Id.* at p. 972.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving

7

the weighing of evidence or the exercise of discretion.'" (*Ibid.*) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95], subdivision (c)." (*Ibid.*)

In October 2021, Senate Bill 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020-2021 Reg. Sess.; Stats. 2021, ch. 551, § 1.) As a result of the amendments, section 1170.95 clarified that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a).) The amendments also codified the holding in *Lewis* that a petitioner has the right to appointment of counsel, if requested, prior to the court making the prima facie finding: "Upon receiving a petition in which the information required by this subdivision is set forth . . . , if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) These changes to the law do not impact the matter before us.

However, the People point out that Senate Bill 775 also " '[c]odifies the holding[s] of [*Lewis*] regarding . . . the standard for determining the existence of a prima facie case.' (Senate Bill No. 775 (2020-2021 Reg. Sess.) at § 1.)" To this end, the People highlight that our high court concluded that the " 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra*, 11 Cal.5th at p. 972.) With this minimal bar in mind, the People concede that the record of conviction does not demonstrate Dominguez's ineligibility for resentencing under section 1170.95 as a matter of law.

Specifically, the People admit Dominguez was charged with murder both as an aider and abettor and under the natural and probable cause doctrine. Although the prosecutor proceeded primarily on a direct aiding and abetting theory based on Dominguez telling his cohort "Go ahead, shoot, shoot" and the trial court provided the jury with "a brief and generalized instruction on liability predicated on natural and probable consequences without identifying a specific target offense" the People acknowledge "it cannot be said that the jury heard no instruction or argument on a natural and probable consequences murder liability."

Our review of the record supports the People's concession. For example, the trial court provided the jury with CALJIC No. 3.02, which, at the time of the trial, provided:

> "One who aids and abets is not only guilty of the particular crime that to his or her knowledge his or her confederates are contemplating committing, but he or she is also liable for the natural and probable consequences of any criminal act that he or she knowingly and intentionally aided and abetted. You must determine whether the defendants are guilty of the crime originally contemplated, and, if so, whether the crime charged in Count 1 was a natural and probable consequence of such originally contemplated crime."

Further, the prosecutor referred to the natural and probable consequences doctrine during closing argument as follows:

> "Why is that [the natural and probable consequences doctrine] significant here? Well, what we are talking about is a shooting. There is [*sic*] multiple gunshots. A person ends up being shot to death. Well, if someone helps someone in some form, according to the way the law describes it, to commit a shooting, even if they didn't intend that a death result as part of that shooting, a shooting

9

> followed by a death is a natural and probable consequence and you're just as responsible as if that had been on your mind the entire time."

The jury instruction referring to the natural and probable consequences doctrine and the prosecution's reference to that theory during closing argument creates the possibility, however slight, that the jury might have relied on the natural and probable consequences doctrine to find Dominguez guilty of murder. The superior court therefore could not determine that Dominguez's petition for resentencing under section 1170.95 lacked merit without weighing the evidence. Such an exercise at the prima facie stage of petition review is clear error. (See *Lewis*, *supra*, 11 Cal.5th at p. 974; *Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

In summary, considering the record before us against the backdrop of Senate Bill 775, *Lewis*, *supra*, 11 Cal.5th 952, and the development of caselaw on this issue following *Lewis*,[3] we accept the People's concession and reverse the superior court's order denying Dominguez's petition under section 1170.95. On remand, the superior court shall issue the appropriate OSC and consider the relevant evidence.

---

[3]     (See, e.g., *People v. Montes* (2021) 71 Cal.App.5th 1001, 1007 ["Because appellant's jury was instructed on the natural and probable consequences doctrine for attempted murder, appellant may establish a prima facia showing of eligibility"]; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 936-937 ["The jurors could have relied on direct aiding and abetting principles or the natural and probable consequences doctrine, and the record of conviction does not exclude the possibility that they relied on natural and probable consequences"].)

## DISPOSITION

The order denying Dominguez's petition for resentencing under section 1170.95 is reversed. The superior court is directed to issue an order to show cause and to hold an evidentiary hearing as required by statute. We express no opinion on the appropriate outcome of such hearing.


HUFFMAN, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.

11